PETER HOAGLAND vs. HARMAN H. TITUS and others.

1. Where the evidence in a cause fails to prove that a transfer of promissory notes was procured by fraud or false accusation, or by any combination or conspiracy, it seems nevertheless, that the transfer may be held invalid on the ground of *surprise*, coupled with evidence of mental weakness.

2. On this ground under the circumstances a re-hearing was ordered.*

The bill in this cause was filed May 11th, 1861. Pursuant to the prayer of the bill an injunction issued, restraining the defendants from transferring or negotiating three several notes, amounting to $3429, endorsed by the complainant to Harman H. Titus. A motion was made to dissolve the injunction and argument was had thereon. The motion was denied. The opinion of the Chancellor denying the motion, will be found reported in 1 *McCarter* 81.

The complainant now seeks to set aside the transfer of the notes.

*J. V. Voorhees* and *Ransom*, for complainant.

1. The transfers were without consideration.

2. Consideration in part illegal; it being the suppression

---

*The cause was not re-heard, the parties having in the meantime effected an amicable settlement.

of a criminal prosecution. 1 *Parsons on Contracts*, 380, *and cases cited in note*; *Collins* v. *Blantern*, 2 *Wils.* 347; *Armstrong* v. *Toler*, 11 *Wheat.* 258; *Deering* v. *Chapman*, 22 *Maine* 488; *Keir* v. *Leeman*, 9 *Queen's B.* 371; *Gardner* v. *Maxey*, 9 *B. Mon.* 90; 7 *Greenl.* 461; 3 *Comst.* 19; 2 *Peters* 527.

3. Transfer procured under *duress*.

*Beasley*, for defendants.

The defendants are not here to enforce a contract. The complainant is not in a position, therefore, to invoke the benefit of the second and third points.

There is no *duress*. 1 *Parsons on Cont.* 319, 320; 1 *Story's Eq. Jur.*, § 239; 1 *Bla. Com.* 130, *notes*; 1 *Eden on Inj.* 27.

It does not fall within cases of *surprise*. *Evans* v. *Llewellyn*, 2 *Bro. Ch. R.* 150; 1 *Cox* 333.

THE CHANCELLOR. On the twelfth of February, 1861, Peter Hoagland, the complainant, endorsed and delivered to Harman H. Titus, one of the defendants, three promissory notes, then held and owned by him, *viz.* one made by Dennis S. Hoagland to the complainant, for $2179; another made by Harman Hoagland, for $950; and the third made by Christopher S. Hoagland, for $300; all of which were then past due, and which remained in the hands of the endorsee at the time of filing the bill.

The bill seeks to set aside the transfers of these notes on the ground that they were obtained by fraud, false accusation and threats, and without any value whatever; by means of a fraudulent conspiracy between the defendants, the said Harman, and his sister and mother.

On filing the bill an injunction issued to restrain the transfer of the notes by the endorsee.

So far as the case rests upon the charges that the transfer of the notes was procured by fraud or false accusation, or by any combination or conspiracy between the defendants, it is not sustained by the evidence. Jane Titus, one of the de-

fendants, is the sister of the complainant, and the mother of Harman H. and Lenah Titus, the other defendants. At the time of this transaction, the complainant lived with his sister and her family, in the county of Somerset. On the eleventh of February, 1861, a note was sent, at the mother's request, to her son Harman, apprizing him that his sister Lenah was pregnant by her uncle, the complainant, and that the family wanted his advice. The note was received by the son on the morning of the twelfth of February, at the city of Trenton. He went that evening to Somerville, where, after consulting counsel and in pursuance of his advice, he sued out a warrant upon his own affidavit against the complainant on a charge of fornication, placed the warrant in the hands of a constable, and accompanied by the officer, reached his mother's house before midnight, and within three hours afterwards the notes were endorsed and delivered to Harman H. Titus. There is nothing in the case to justify a suspicion that the son was not actuated in the whole transaction by the best of motives, or that the son and the mother did not act upon the full conviction and belief that the complainant was guilty of the crime laid to his charge.

Nor is there any evidence to justify the belief that the charge against the complainant is false. The mother of the child, in her answer, expressly states that he is the father of the child, and if there were room for doubt upon that point, there is the most satisfactory evidence that the complainant, notwithstanding the express allegations contained in his bill to the contrary, was guilty of criminal intercourse with the mother of the child. The investigation of the case must proceed upon the ground that there was neither a false charge, nor conspiracy, nor fraud resorted to, to obtain the transfer of the notes.

Nor is there any evidence that the transfers were made under duress. The evidence is, that the warrant was not served, that the officer was not seen by the complainant, that the presence of the officer in the house, or even the fact of the existence of the warrant, was not made known to the

complainant until after the notes had been endorsed and delivered.

It is further urged that the endorsement of these notes is founded upon an illegal consideration, to wit, the suppression of a criminal prosecution, or if that fact is not established, then that the contract was without any valuable consideration whatever, being founded merely on the moral obligation resting on the complainant to repair the wrong which he had inflicted. It is true that both these defences are available at law, but it is apparent that if the bill is dismissed and the injunction dissolved, the notes may be at once transferred to a *bona fide* holder, and the complainant be thus deprived of all opportunity of making defence. I am the more disposed to retain the cause, in order to the discussion of another objection suggested on the argument, *viz.* that the contract is invalid on the ground of surprise, coupled as it is with evidence of the mental weakness of the complainant. The evidence on the part of the defendants is, that the complainant, as a recompense for the injury he had inflicted upon his niece, and in order to her future support, not only assigned to her the notes in question, amounting to about $3500, but that he also agreed to transfer to her every article of personal property he owned, even to his clothing, amounting in value to $500 more. Having thus voluntarily, as is alleged, agreed to strip himself of his entire property, he refused to go to Somerville to make a legal transfer of the property, and was only induced to go by threats of arrest and the influence of the officer who held the warrant and the authority to arrest him. The claim to the residue of the complainant's property, as well as the execution of any further instrument of transfer, was abandoned under the advice of counsel, but not from any objection made by the complainant. On the contrary, he told them to take all he had, though in a manner that suggested to counsel the idea that it was not of his free will. A release was prepared by counsel of all claims against him in relation to the transaction, but he utterly refused to accept it. On his return from Somerville he borrowed money

to pay the fees of counsel employed against him, of the officer who arrested him, and the travelling expenses of the party making the charge against him. All this, it is suggested, was induced by the promptings of remorse, in order to make atonement, as far as possible, for the deep wrong that he had inflicted. It may be so. But it also gives rise to considerations of a different character, and in connection with the previous history of the complainant, renders it proper that the case should undergo a more full discussion and consideration. I shall order a re-hearing. In the meantime, I earnestly hope that an effort will be made by the parties to effect an amicable settlement of the difficulty. A great wrong has been done by the complainant for which he ought to make reparation, and it is desirable that it should be promptly done, without further litigation, expense or occasion for scandal. If the settlement cannot be made, I will direct the cause to be set down and re-heard at the present term.